J-S40014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| K.F.S., | IN THE SUPERIOR COURT |
| Appellant | OF PENNSYLVANIA |
| v. | |
| N.S.R., | |
| Appellee | No. 359 WDA 2019 |

Appeal from the Order Dated January 31, 2019
In the Court of Common Pleas of Butler County
Civil Division at No(s): FC12-90560-C

BEFORE: BENDER, P.J.E., MCLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 30, 2019**

K.F.S. ("Mother") appeals from the custody order dated January 31, 2019, that awarded Mother and N.S.R. ("Father") shared legal custody of two of the parties' children, C.C.R. (born in September of 2002), and J.K.R. (born in February of 2005) (collectively "Children"). The January 31st order also awarded primary physical custody of C.C.R. to Mother, and primary physical custody of J.K.R. to Father. After review, we affirm.

The relevant scope and standard of review in custody matters are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. … However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its

---

[*] Retired Senior Judge assigned to the Superior Court.

own independent determination. … Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

**R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting **Bovard. Baker**, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

Mother raises the following four issues for our review:

1. Did the [t]rial [c]ourt err in determining [whether J.K.R.'s preference] was well-reasoned based on good reasons, considering the child's intelligence and maturity?

2. Did the [t]rial [c]ourt err in ignoring Father's home environment when determining "the best interest of J.K.R."?

3. Did the [t]rial [c]ourt err in allowing J.K.R. to attend Freeport school?

4. Did the [t]rial [c]ourt err in separating the siblings – C.C.R. and J.K.R. – absent compelling reasons?

Mother's brief at 7.

Here, in its opinion, the trial court set forth a factual and procedural history of this case and included information relating to the testimony of various witnesses. In addition, the trial court discussed and applied the custody factors contained in 23 Pa.C.S. § 5328. The court also explained its reasons for issuing the January 31, 2018 order now on appeal. Most notably, the court mentions the high conflict and contentiousness of this custody case that has not lessened over the years.

It is apparent that Mother's arguments are essentially requesting that this Court re-find facts and re-weigh the evidence. However, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." *C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012). Rather, we "may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." *E.D. v. M.P.*, 33 A.3d 73, 76 (Pa. Super. 2011). We do not conclude that that is the situation here. The trial court's findings are based on competent evidence contained in the record and its conclusions are not unreasonable.

We have reviewed the certified record, the parties' briefs, the applicable law, and the thorough, well-reasoned opinion authored by the Honorable Timothy F. McCune of the Court of Common Pleas of Butler County, dated

January 31, 2019. We conclude that Judge McCune's opinion properly disposes of the issues presented by Mother in this appeal. Accordingly, we adopt the trial court's opinion as our own and affirm the custody order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2019

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

*K.F.S.*

————————————,          :

Plaintiff,

v.                                    :          Family Court No. 2012-90560-Custody

*N.S.R.*

————————,                 :

Defendant.



| | |
|---|---|
| For the Plaintiff: | Matthew Fischer, Esq. |
| For the Defendant: | Ashley Folio-Morgan, Esq. |
| Guardian Ad Litem: | Elizabeth A. Smith, Esq. |
| Judge: | Timothy F. McCune |
| Date: | January 31, 2019 |

## MEMORANDUM OPINION AND ORDER OF COURT

The above-captioned matter is before the Court following a three-day custody trial on Plaintiff-Mother's Complaint for Modification of Existing Custody Order filed on May 8, 2017. The three-day trial was held on September 21, 2018, October 4, 2018 and December 21, 2018. The existing custody order is dated April 15, 2016 and was filed on April 19, 2016.

This case has been and currently is as high conflict and contentious a custody case as the Court has seen. It has been the subject of accusations and counter accusations of parental misconduct, physical and mental abuse, non-compliance with court orders, and accusations of unethical and unprofessional conduct by professionals involved the case. Despite the Court's best efforts, the contentious relationship between the parties continues to affect the parties' custody relationship with the children. This Judge has not been involved in the case the entire time, but this Judge definitely concurs with Dr. Bernstein's conclusion that, "Certainly both parents need to find alternative ways to address conflict than by involving the authorities. I am not agreeing with Dr. Reiser's point about Ms. Frndak-Suder using 'nuclear options', but agree that if and when possible, avoiding legal involvement is ideal."

At the time of the filing of Mother's Complaint for Modification, the parties, ~~███████~~ *K.F.S.* (hereinafter, referred to as "Mother") and ~~███████~~ *N.B.R.* (hereinafter, referred to as "Father"), were the parents of three minor children together, V.G.R. (17 years of age), C.C.R. (14 years of age) and, J.K.R. (12 years of age). V.G.R. is now emancipated and is no longer involved in the custody matter before the Court. The parties are divorced from one another and both have since remarried. Mother and her family reside in the South Butler County School District. Father and his family reside in the Freeport Area School District.

The prior order, dated April 15, 2016, was the result of an agreement reached between the parties at the time set for a prior custody trial. Since the issuance of that order, numerous allegations of non-compliance have been alleged and on June 7, 2016, less than two months after the order was issued, Mother filed a Petition for Contempt and Special Relief. On June 8, 2016 Father filed a Reply and a Counter Petition for Special Relief. On July 21, 2016, Father filed a Petition for Contempt for Mother's failure to follow the April 15, 2016 order. A hearing was held on August 8, 2016 and was continued until November 16, 2016, then continued until January 5, 2017. Mother filed an additional Petition for Contempt and Special Relief on November 8, 2016 seeking to suspend Father's time alleging excessive alcohol consumption. This matter was scheduled to be heard on January 5, 2017 as well.

A status conference was held December 6, 2016 and the Court reviewed a Family Pathways report which indicated that Father and the minor children were making progress based on the evidence presented at hearing on August 8, 2016. The status conference report found that Mother had failed to comply with the court order following the July 16, 2016 assessment. On March 3, 2017, Judge Doerr issued an order failing to find Father non-compliant with orders of court and found Mother in contempt for failing to provide Father's custodial time without valid reason. Of particular importance to the issues before the Court at this time is Judge Doerr's finding: "[C]onsistent with the Court's previous findings in the case, the pattern of conduct established by the testimony indicates that, whether intentionally or unknowingly Mother has held Father out in such a negative light to the children that they do not feel they can express their love to Father, because if they do it would indicate a betrayal of Mother" (this will be placed in context later in the opinion). Judge Doerr further ordered the parties to participate in co-parenting counselling with Dr. Joyce Smith and within five days to schedule an appointment.

On April 13, 2017, Guardian Ad Litem (hereinafter, "GAL") Smith filed a motion with the Court indicating that as of March 31, 2017, Father had called and made an appointment, however, Mother had not. The motion also indicated that V.G.R. had failed to attend required counselling appointments and that C.C.R. had not cooperated during said counselling sessions. A hearing on the motion was scheduled for May 26, 2017. On April 18, 2017, Mother filed another Petition for Special Relief and Contempt containing numerous allegations of bad parenting by Father and again requesting that his partial custody rights be suspended. A hearing was scheduled for July 24, 2017.

Mother filed a Complaint for Modification of Existing Custody Order on May 8, 2017 and a Custody Conciliation was scheduled on July 17, 2017. Under the existing custody order of April 15, 2016, the parties shared legal custody of the minor children with Mother having primary physical custody subject to Father's partial physical custody. On May 11, 2017, the Court ordered the parties, if they had not yet attended, to attend the seminar for divided families at Lifesteps. On June 2, 2017, following a hearing on the GAL's Petition for Special Relief, the Court ordered the parties to follow the Court's

2

previous orders directing the parties and minor child, V.G.R., to attend and participate in counselling at Family Pathways. On August 18, 2017, the Court ordered the parties to undergo custody evaluations with Dr. Eric Bernstein. On the same date, the Court scheduled a pre-trial conference on December 19, 2017. The pre-trial conference was continued to January 9, 2018, then to January 23, 2018, and finally to March 20, 2018.

On July 11, 2017, Father filed a Petition for Civil Contempt for Disobedience of Custody Order. In it, Father avers that Mother failed to schedule court-ordered counselling appointments for herself and V.G.R. Additionally, Mother took the minor children on a vacation to Punta Cana without informing Father and refused J.K.R.'s request to call Father while there. Following a hearing on this matter on October 20, 2017, the Court ordered Mother to pay Father's legal counsel fees of $2,500. On November 21, 2017, Mother filed a Motion for Reconsideration and Notice of Appeal. At hearing on December 12, 2017, the Court vacated the October 20, 2017 order and directed Mother to pay Father's legal counsel fees in the amount of $1,250. Thereafter, Mother withdrew the appeal.

Both parties filed pre-trial statements on March 19, 2018. A pre-trial conference was held on March 20, 2018 and the Court scheduled the custody trial on June 15, 2018 and June 22, 2018. The trial was rescheduled to September 21, 2018 as Father had retained new counsel. On August 13, 2018, Mother filed a Petition for Contempt and Petition for Special Relief. By Order of Court of August 7, 2018, the Court ordered that these matters would be discussed at the pre-trial conference scheduled on August 14, 2018.

· Following the pre-trial conference on August 14, 2018, the Court issued Order of Court of August 15, 2018 in which it stated that the Court will conduct an in-camera hearing on August 27, 2018 to hear testimony of minor child J.K.R. and that a second day of trial was scheduled on October 4, 2018. The GAL filed an updated report on August 14, 2018 which in part indicated that she had spoken to J.K.R. near the end of the school year and that he indicated that he wished to reside with Father and attend school at Freeport. J.K.R. told her that if he voiced a preference someone would be mad. At the in-camera hearing held on August 27, 2018, J.K.R. indicated that he wished to remain with Mother and attend school at Knoch (South Butler County School District). The Court will note that J.K.R. seemed extremely nervous and uncomfortable during the testimony. He indicated that he thought Father would be mad if he chose to remain with Mother and that Mother would be upset if he said he wanted to live with Father.

Both parties filed updated pre-trial statements on September 10, 2018. On September 11, 2018, GAL Smith filed a supplemental report indicating that J.K.R. had contacted her when he was at school and that he wanted to tell the Court that he had only said that he wanted to remain with Mother because she had pressured him on the way to court and that if he could testify he would like his Father to bring him to court not his Mother. On September 12, 2018, Father filed a Petition for Special Relief indicating that upon receiving the GAL report, Mother had removed J.K.R.'s cell phone and did not permit him to contact Father except in the presence of Mother. Father also requested that the Court permit J.K.R. to provide further in-camera testimony.

The Court granted Father's request to permit J.K.R. to provide further in-camera testimony. Additionally, the Court ordered that counsel for either party shall not be permitted to meet with or discuss the case with any minor child without the GAL being present. Furthermore, the minor child's (J.K.R.) cell phone shall be immediately returned to him and that he be permitted free access to contact

3

either party or the GAL and that the minor child would be given privacy if he is speaking on his phone with either party or the GAL. The Court heard further testimony from J.K.R. on September 21, 2018 when he testified that he wished to live with Father and attend school at Freeport. J.K.R. indicated that he had a good relationship with his step-brothers, B. (16 years of age) and Z. (14 years of age). He wanted to go to school with Z. as they were in the same grade and had many of the same friends in the school. He also indicated he wanted to play sports at Freeport with Z.

Dr. Eric Bernstein conducted custody evaluations in this matter and submitted reports dated April 12, 2016 and March 5, 2018. The conclusion he reached in the March 5, 2018 report was that the status quo should remain with the exception that C.C.R. should spend every other weekend with Father and that he would have the option of a one (1) week vacation with Father during the summer and that Father would have two (2) consecutive weeks of summer vacation with J.K.R.

While the Court acknowledges the time and effort spent and the reasoned conclusions of Dr. Bernstein, the Court does not concur with the conclusion regarding J.K.R. Minor child, J.K.R., acknowledged that he wishes to spend the majority of his time in the custody of Father and to attend Freeport schools. The Court finds his reasoning to be well thought out and based on legitimate reasons. The Court finds that his prior statement of preferring to stay with Mother was based on undue pressure and coaching by Mother.

Given the animosity and ill will towards Father in Mother's home from Mother, V.G.R. and C.C.R., the Court believes that Father should be given the opportunity to parent J.K.R. for the majority of time in an attempt to continue a relationship with him, a relationship Father has been unable to foster with V.G.R. and C.C.R. Permitting J.K.R. to reside with Father will also give Father an opportunity to attempt to reestablish a relationship with C.C.R. during the limited time that C.C.R. will be with Father at his home.

## LEGAL STANDARD

"With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa.Super.2011), *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa.Super.2013). "In any action regarding the custody of the child between the parents of the child, there shall be no assumption that custody should be awarded to a particular parent." Title 23 Pa.C.S.A. § 5327(a) of the Domestic Relations Code.

"It is well established that the court is required to consider the opinions of experts, but it is not bound by these opinions and has a responsibility for making its own determinations." *Jacob v. Schultz-Jacob*, 923 A.2d 473 (Pa.Super.2007). "The court need not accept the recommendation of a court-appointed expert." *Nomland v. Nomland*, 813 A.2d 850 (Pa.Super.2002). "Furthermore, the court is not bound even by the uncontradicted recommendation of the evaluator." *King v. King*, 889 A.2d 630 (Pa.Super.2005).

"In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of

4

the child, ... ." Section 5328(a) of the Domestic Relations Code. The court's consideration of the relevant factors follows below.

## DISCUSSION OF THE FACTORS

This opinion and the resulting custody order are based upon a consideration of all of the relevant factors in accordance with section 5328(a) as follows:

1. **Which party is more likely to encourage and permit frequent and continuing contact between the child and the other party.** This factor favors neither parent. The testimony revealed that, in one episode during the late summer/early fall, Mother prevented J.K.R. from communicating with Father. While Father may not prevent the minor children from having contact with Mother, given the conflict between the parties, it is doubtful that Father encourages contact.

2. **The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.** Mother filed Protection From Abuse (PFA) petitions on two (2) different occasions against Father. Neither became final. Also, upon investigation, Children and Youth Services determined that the complaints were unfounded.

2.1 **The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).** Not applicable.

3. **The parental duties performed by each party on behalf of the child.** Historically, this factor favors Mother as she has always had primary physical custody of the minor children. Father testified that he has offered to help with the minor children's medical appointments.

4. **The need for stability and continuity in the child's education, family life, and community life.** This factor favors neither parent.

5. **The availability of extended family.** This factor favors Father. Paternal grandmother's testimony at trial indicates that she has been a vital resource to the family by providing child care, transportation and support to the minor children.

6. **The child's sibling relationships.** This factor favors neither parent. Both parents have remarried and the minor children have close relationships with their half-brothers and sisters as well as stepbrothers and sisters.

5

7. **The well-reasoned preference of the child, based on the child's maturity and judgment.** This factor favors neither parent. C. C.R. has requested that he live primarily with Mother and J.K.R. has requested that he live primarily with Father. The court finds each child's rationale is persuasive based on the child's maturity and judgment.

8. **The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.** This factor favors neither parent. The record reveals that Mother has attempted and perhaps has succeeded in turning one or more of the minor children against Father. Furthermore, this negative behavior towards Father continues in Mother's household. Father testified that he is concerned about J.K.R. living in Mother's home and his school and sports activities attendance. There is also evidence that Father and stepmother have spoken poorly of Mother in the minor children's presence.

9. **Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.** This factor favors neither parent. C.C.R. testified that he would like to live primarily with Mother and that he is very close to his sister, V.G.R. He stated that his relationship with Father is poor. Father stated that his relationship with C.C.R. is challenging. Although J.K.R. has vacillated in recent months about where he would like to live primarily, he appears to genuinely want to live with Father and attend school in the Freeport School District.

10. **Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.** This factor favors neither parent and both are fully capable of attending to the needs of their minor children. However, because of the rift between Father and C.C.R. at this time, Mother is more likely to be successful at attending to the needs of C.C.R.

11. **The proximity of the residences of the parties.** This factor favors neither parent. The parties live approximately 15 (fifteen) minutes from one another.

12. **Each party's availability to care for the child or ability to make appropriate child-care arrangements.** This factor favors neither parent. Both parents have the ability to make appropriate child-care arrangements when needed.

13. **The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.** This factor favors neither parent. Both parents are responsible for the high level of conflict in this

6

matter. The parties continue to be unwilling and unable to cooperate and communicate with one another in a mature, adult fashion. Hopefully, with the aid of counselling, the parties will be able to lessen the animosity between them for the good of their children.

14. **The history of drug or alcohol abuse of a party or member of a party's household.** Mother testified that a minor child/children told her that Father shouldn't drive because of his consumption of alcohol. Father and stepmother were court ordered to refrain from consuming alcohol during their custody time with the minor children. According to testimony at trial, this is no longer an issue.

15. **The mental and physical condition of a party or member of a party's household.** Not applicable.

16. **Any other relevant factor.** None noted.

CONCLUSION

After carefully weighing and considering the evidence presented at trial, and upon a review of the record and a consideration of the statutory factors, the court finds that for the reasons stated herein and on the record at trial, that Mother's Complaint for Modification of Existing Custody Order is DENIED and Father's request to modify custody is GRANTED.

Accordingly, the court issues the following order:

IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY, PENNSYLVANIA

*K.S.F.*
~~_____~~,                                    :

Plaintiff,

v.                                               :          Family Court No. 2012-90560-Custody

*N.S.R.*
~~_____~~                                     :

Defendant.

## ORDER OF COURT

AND NOW, this ⟨31⟩ day of January, 2019, upon consideration of the evidence presented at the custody trial held on September 21, 2018, October 4, 2018, and December 21, 2018, a review of the record, as well as the reasons stated on the record at trial and in the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1.  Plaintiff, ~~_____~~ *K.S.F.* (hereinafter, "Mother") and Defendant, ~~_____~~ *N.S.R.* (hereinafter, "Father") shall share legal custody of the minor children, C.C.R. and J.K.R., such that each party is entitled to input and shared information regarding major life decisions surrounding the minor children, including, but not limited to, their medical needs, education, and spiritual training. Each party agrees to immediately inform the other party if any medical emergency arises when the minor children are with either of them. In the event the minor children have to take medication, the medication and the written information regarding the same shall be exchanged between the parties and administered appropriately. Each party as a parent has the right to equal access to all of the records pertaining to the above.

    a)  Mother shall provide to Father copies of the minor children's current medical insurance cards within ten (10) days from the date of this Order. In the event that she does not comply, she shall be sanctioned $200 per day until she is in compliance. Thereafter, both parties shall ensure that the other has current medical insurance information and copies of any insurance cards for the minor children.

2.  Mother shall have primary physical custody of C.C.R. subject to Father's partial custody rights as follows: Father shall have custody every other weekend beginning in February, 2019 from Friday after school or 9:00 a.m. if there is no school until Monday after school or 9:00 a.m. if there is no school. Father's partial custody time with C.C.R. shall coincide with Father's custody time with J.K.R.

1

3. Father shall have primary physical custody of J.K.R. subject to Mother's partial custody rights as follows: Week one: Mother shall have custody from Wednesday after school or 9:00 a.m. if there is no school until Friday after school or 9:00 a.m. if there is no school; and, Week two: Mother shall have custody from Friday after school or 9:00 a.m. if there is no school until Monday after school or 9:00 a.m. if there is no school.

   a) J.K.R. shall be enrolled in the Freeport Area School District at the beginning of the 2019 – 2020 school year. He shall attend Freeport Area School District until further order of court or by agreement of the parties.

4. It is the intent that the minor children shall be together during their respective partial custody time with each parent.

5. The parties shall share and rotate custody of the minor children for the holidays as follows:

   a) Easter: In odd years, Father shall have the minor children from 3:00 p.m. on Easter Eve until 3:00 p.m. on Easter Day and Mother shall have the minor children from 3:00 p.m. on Easter Day until 3:00 p.m. on Easter Monday. This schedule shall be reversed in even years.
   b) Thanksgiving: Every year Mother will have custody of the minor children on Thanksgiving Day from 9:00 a.m. until 3:00 p.m. and Father will have custody of the minor children on Thanksgiving Day from 3:00 p.m. until 9:00 p.m.
   c) Christmas: In odd years, Father shall have custody of the minor children from 3:00 p.m. on December 23rd until 6:00 p.m. on December 24th and from 3:00 p.m. on Christmas Day until 3:00 p.m. on December 26th. In odd years, Mother shall have custody of the minor children from 6:00 p.m. on December 24th until 3:00 p.m. on Christmas Day. In even years, Mother shall have custody of the minor children from 3:00 p.m. on December 23rd until 6:00 p.m. on December 24th and from 3:00 p.m. on Christmas Day until 3:00 p.m. on December 26th. In even years, Father shall have custody of the minor children from 6:00 p.m. on December 24th until 3:00 p.m. on Christmas Day.
   d) New Year's: In odd years, Mother shall have custody of the minor children from New Year's Eve at 3:00 p.m. until New Year's Day at 3:00 p.m. and Father shall have custody of the minor children from 3:00 p.m. on New Year's Day until 3:00 p.m. on the following day. This schedule shall be reversed in even years.
   e) The minor children will be with Mother each Mother's Day from 9:00 a.m. until 9:00 p.m. and with Father each Father's Day from 9:00 a.m. until 9:00 p.m.
   f) The holiday schedule supersedes the regular custody schedule and no vacation shall be used over the holiday schedule unless agreed to by both parties.

6. Each party is permitted to take two (2) weeks of uninterrupted custody time when the minor children are not in school. Such time shall be considered a "vacation" although the parties are not required to travel during this time. For the purposes of this Order, a week shall be a consecutive seven (7) day period. The parties may tack on their regular weekend

2

custody to the beginning or to the end of any vacation period. The parties shall provide no less than sixty (60) days' notice of any proposed vacation custody. Should a conflict arise, Mother shall have priority in odd years and Father shall have priority in even years. The parties agree that the minor children may not miss school under this provision without written consent from both parents or by order of court.

7. Transportation for custody exchanges shall take place at each party's residence with the party beginning his or her custody period picking the minor child/minor children up from the party ending his or her custody period, unless the parties are able to exchange at school or by using the school bus.

8. The parties shall continue to utilize Our Family Wizard to have a healthy dialogue regarding the health, safety, welfare and scheduling for the minor children. Each parent shall view Our Family Wizard once per day and respond promptly when necessary. In the event of an emergency, the parties shall utilize texting or a phone call.

9. Neither party shall schedule activities for the minor children during times when the other party has physical custody without the other party's consent. Such consent shall not be unreasonably withheld except that the parties shall give primary consideration to the extent possible to adhere to the minor children's usual schedule and routine.

10. The parties agree that each shall ensure the minor children's attendance and participation in all mutually agreed upon extracurricular and school related activities whenever possible. Each parent shall ensure the minor children's timely attendance of school and shall ensure all school work for the following day has been completed during that parent's custody time.

11. Each party shall be entitled to telephone contact with the minor children once per day when the minor children are with the other party. In addition, the minor children shall be entitled to call either parent without restrictions and without interference from the other party as long as the contact does not unduly interfere with the other party's custodial time. Whenever a minor child is in the home of one parent, the parent whose home the minor child is in has the responsibility to ensure there is a phone available and that the minor child has privacy during the phone call.

12. The adults shall refrain from any discussion with the minor children pertaining to issues relating to this litigation, including custody, counseling, PFA, arrest, police or parenting. The adults shall take all steps possible to shelter the minor children from adult matters and remove the unnecessary burden of pressure upon them. To this end, the terms of this agreement and the change in the custody schedule shall be addressed with the minor children by the Guardian Ad Litem within the next five (5) days.

3

13. The Butler County Custody/Partial Custody Policies are incorporated and made a part of this Order, and will apply in all court-ordered custody and partial custody arrangements unless specifically indicated otherwise by the court.

14. It is further ordered that enforcement of this custody arrangement shall only be by means of a civil contempt action filed by either party. Custody will not be enforceable by law enforcement agencies due to the civil nature of this action.

15. This court shall exercise continuing jurisdiction over the parties and the minor children.

16. This order shall supersede all prior orders of court regarding custody of the minor children.

17. Each party shall contact Dr. Eric Bernstein within five (5) days of the date of this order for his recommendation as to what counseling each party should complete. Upon receiving the doctor's recommendation, each party shall participate fully in attending each appointment and the treatment therein.

18. Mother's Petition for Contempt and Petition for Special Relief filed on August 13, 2018 is hereby DENIED.

19. The Guardian Ad Litem shall be released from her appointment after completing her duties as outlined in this order at Paragraph 12. and after submitting her final bill.

20. It is furthered ordered that neither party may relocate the minor children unless every individual who has custody rights to the minor children consents to the proposed relocation, or the court approves the proposed relocation. Notice of the proposed relocation must be given and a counter-affidavit must be served on every individual who has custody rights to the minor children, as set forth in Title 23 Pa.C.S.A. § 5337. Relocation, for purposes of this Order, is defined as a move which would necessitate a change in the visitation schedule or significantly impair the ability of the non-relocating party to exercise custody, change of school district for the minor children, or exceed a twenty-five (25) mile radius.

BY THE COURT:

_____
TIMOTHY F. McCUNE, JUDGE

4